Theodore WILL et al., Plaintiffs and Appellees,

v.

Oscar H. WILL, Defendant and Appellant.

Civ. No. 9265.

Supreme Court of North Dakota.

Dec. 27, 1976.

Rehearing Denied Jan. 20, 1977.

William R. Mills, Bismarck, for defendant and appellant.

Richard P. Rausch, Bismarck, for plaintiffs and appellees.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment of the District Court of Emmons County, decreeing that a deed to a certain 80 acre tract in Emmons County, recorded in the office of the Register of Deeds of that county by Oscar H. Will, is null and void. At issue are (1) whether the deed in question was properly delivered to Oscar H. Will and (2) whether certain acts of Oscar H. Will prior to his recording that deed estop him from asserting its validity.

The defendant, Oscar H. Will, is a brother of Theodore Will, Herbert Will, Alma Myers, John Will, Henry Will, Jr., Herman Will, and Edwin Will, the plaintiffs in this action.

Oscar was a co-administrator, with his brother, Theodore, of the estate of his father, Henry Will, Sr., who died intestate on December 25, 1967. The distribution of that estate was made according to an "Agreement for Distribution and Partition of Estate", purportedly signed by Oscar as well as by the plaintiffs in this action. Gottfried Will and Sophia Will, the brother and mother of the parties, who are not themselves involved in this suit, apparently also signed the agreement. The agreement, in pertinent part, provided that each child of Henry Will, Sr. was to receive specifically described tracts of property, and that certain other real property was to go to Sophia Will for life, with a specific remainder interest in Henry Will, Jr., and the balance of the remainder interest to go in equal shares to the nine children of Henry

Will, Sr. The disputed 80 acre tract was included in this latter category. Oscar maintains that he did not sign the agreement, and that the signature purported to be his is not genuine.

Several deeds had apparently been made out by Henry Will, Sr., prior to his death, granting tracts of land to each of his children, but were still in his possession at the time of his death. Oscar asserts that one such deed, dated October 2, 1958, granting to him the disputed 80 acre tract, was delivered to him in December of 1965. Theodore Will testified that, a few days after their father's funeral, he and Oscar went through a box at the father's home containing some deeds, including the one to Oscar describing the disputed 80 acre tract, and that Oscar took them with him when he left his father's home. Oscar testified that the deed was in his own safe at the time of his father's death, and that it remained there until he recorded it on August 7, 1974.

The trial court made no specific finding as to whether the deed had been properly delivered, but did find that Oscar had "entered into the written agreement for division and distribution of the lands on the 29th day of December, 1967, . . . ." That Oscar signed the agreement is inherent in this finding.

The court's second Conclusion of Law is as follows:

"That the defendant, Oscar H. Will, is bound by the terms and provisions of the agreement which he signed as did the other children of said decedent and that by virtue of the execution of this agreement and reliance thereon, the defendant waived any right to now assert otherwise and he is bound under estoppel to challenge or attempt to void the same."

■ Application of the doctrine of equitable estoppel in cases involving title to real estate has, in North Dakota, consistently been by employment of the following formula:

"Equitable estoppel affecting real estate title will be found only where the party charged was apprised of the true state of his title, made a statement or admission with the intention to deceive or with such careless and culpable negligence as to amount to constructive fraud, the other party was destitute of knowledge and of the means of acquiring knowledge as to the true state of the title, and the latter relied upon the statement or admission to his injury." *Cranston v. Winters*, 238 N.W.2d 647, 649 (N.D.1976). Syl. ¶ 3.

*Sorenson v. Olson*, 235 N.W.2d 892 (N.D. 1975); *Hutton v. Korynta*, 218 N.W.2d 177, 180 (N.D.1974); *Tostenson v. Ihland*, 147 N.W.2d 104, 114 (N.D.1966). See also *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808, at 813 (N.D. 1976).

■ It is apparent from the reading of the record that the first element of the above formula was shown in this case. Oscar was apprised of what he maintains was the true state of his title at the time the agreement for distribution was entered into. (As the trial court did not reach the issue of whether the deed had been delivered, we will assume, for purposes of discussion only, that it had been delivered prior to the death of Henry Will, Sr.) Oscar places great emphasis on the fact that the court made no specific finding upon the issue of delivery.

■ A finding that promissory estoppel applies must be predicated also upon a finding that Oscar did indeed sign the agreement for distribution. The signature was notarized. Oscar's brothers, Theodore, Henry, and Edwin, all testified that they saw him sign the agreement. Oscar made no claim to the land until seven years later, apparently following a family dispute. His own attorney made a comment to the trial court that he believed Oscar signed the agreement and "forgot about it". In view of these facts, we can hardly say that the trial court's determination that Oscar signed the agreement is "clearly erroneous". Rule 52(a), N.D.R.Civ.P.

As to whether the signing of the agreement was, as the trial court apparently found, careless negligence amounting to

constructive fraud, let us compare this case to the recent case of *Cranston v. Winters, supra.* In that case, a testator left, by will, a life interest in certain real property to his wife, remainder to his children by a previous marriage. The widow, not knowing that she had held the property in joint tenancy with her husband (and title to it vested in her upon his death), signed an Inventory and a Petition for Final Decree of Distribution, in her capacity of co-executrix, both instruments listing the property as an asset of the estate. We found that, as she did not know the true state of her own title, she neither intended to deceive nor was negligent to an extent amounting to constructive fraud. *Id.* 238 N.W.2d at 652. *See also Sittner v. Mistelski,* 140 N.W.2d 360 (N.D.1966).

The instant case seems to us to be more similar, in this respect, to *Hutton v. Korynta, supra.* In *Hutton,* where the defendant remained silent at a sale of certain real property at which the person conducting the sale stated that the buyer would receive immediate possession, we held him estopped to assert a leasehold interest against the buyer. We stated in that case that the defendant's silence showed either an intention to deceive, or such culpable negligence as to amount to constructive fraud. *Id.* 218 N.W.2d at 180. We believe that Oscar's act of signing the agreement for distribution has the same significance.

That the plaintiffs in this case had no knowledge of Oscar's claim to title is clear from the record, nor does Oscar deny this. That they were not so informed at the time the agreement was made surely precludes any argument that they had a duty to make further inquiry, as it was certainly in Oscar's interest that he tell them at that time.

The last element of estoppel is that the party asserting estoppel must have relied on the statement or admission to his injury. The plaintiffs had a right to assume that any arrangements for farming the remainder interest would and could be made through the mother. One in fact made those arrangements with the mother and Oscar is now attempting to thwart that arrangement. That is reliance enough. A loss of that privilege would be a detriment.

An agreement for distribution, such as the one signed by the parties to this case, is a contract. *Johnson v. Tomlinson,* 160 N.W.2d 49, 53 (N.D.1968). Although the plaintiffs have not argued any specific concessions made to Oscar in signing the agreement, this is not necessary since, in North Dakota, a written instrument is presumptive evidence of a consideration. Section 9–05–10, N.D.C.C.; *Muller v. Sprenger,* 105 N.W.2d 433, 439 (N.D.1960). Oscar has shown nothing to overcome this presumption, so we must accept that the plaintiffs gave consideration for the agreement, thus relying on Oscar's statements to their injury.

We find that the finding of estoppel by the trial court is correct, as the four elements discussed above are met, and no finding of fact leading to such finding is clearly erroneous.

As Oscar is estopped from claiming title to the disputed tract, we do not reach the issue of whether the deed was delivered to him.

For the reasons stated in this opinion, the judgment of the district court is affirmed.

VOGEL, PEDERSON, SAND and PAULSON, JJ., concur.